## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ICU Production, Inc., a California corporation, | )<br>) |
| Plaintiff, | ) CASE NO.: |
| vs. | )<br>) |
| | ) **COMPLAINT** |
| Varun Datta, an individual; Datta Holdings, LLC, a Florida limited liability company, | )<br>) **JURY DEMAND**<br>) |
| Defendants. | )<br>) |

### COMPLAINT

For its Complaint against Defendants Varun Datta, an individual ("Datta"), and Datta Holdings, LLC, a Florida limited liability company ("DH") (collectively, "Defendants"), Plaintiff ICU Production, Inc. ("Plaintiff" or "ICU") states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a corporation organized and existing under the laws of the state of California with its principal place of business in the state of California. Therefore, Plaintiff is a citizen of the state of California.

2. ICU is a California-based company that sells wholesale personal protective equipment ("PPE") products, including, but not limited to, nitrile gloves, N95 masks, body-length gowns, goggles and face shields.

3. At all relevant times hereto, Defendant Datta was and is a resident of Fort Lauderdale, Florida and a citizen of the state of Florida.

4. DH is a limited liability company organized and existing under the laws of the State of Florida, conducting business in the state of Florida, with its members being citizens of the state

1

of Florida. Therefore, DH is a citizen of the state of Florida.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity of citizenship between Plaintiff and Defendants. In addition, the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00).

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because DH has its principal place of business in this district, Datta is a resident in this district and because a substantial part of the events giving rise to the claims occurred in this district.

7. This Court has personal jurisdiction over Datta because he is a resident of the state of Florida and regularly conducts business in the state of Florida.

8. This Court has personal jurisdiction over DH because DH has availed itself of the laws of, and directed its activities at, the state of Florida in connection with the wrongful activities alleged in this Complaint, including, but not limited to, being a resident of and conducting its business in the state of Florida.

## ALLEGATIONS COMMON TO ALL CLAIMS

9. In or around July 2021, ICU and DH entered an agreement pursuant to which DH assented to purchase two million four hundred thousand (2,400,000) boxes of nitrile gloves from ICU over the course of a one-year period (the "Agreement").

10. On July 30, 2021, in connection with the payments to be made under the Agreement, Datta executed a personal guaranty for the amount of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit A.

11. The Guaranty states that "[i]t is understood that this guaranty shall be a continuing

and irrevocable guaranty, and indemnity for such indebtedness of the business stated." Ex. A.

### Invoices 2915, 3066 and 3075

12. On or about August 20, 2021, ICU issued Invoice 2915 to DH for an order it placed for two thousand one hundred thirty-two (2,132) cases of nitrile gloves for One Hundred Twenty-Seven Thousand Nine Hundred Twenty Dollars ($127,920.00) at a unit price of Sixty Dollars ($60.00). Invoice 2915 showed an outstanding balance of Fifteen Thousand Two Hundred Twenty Dollars ($15,220.00) owed to ICU, reflecting a partial payment by DH of One Hundred Twelve Thousand Seven Hundred Dollars ($112,700.00), which was applied to the cost of the order. A true and correct copy of Invoice 2915 is attached hereto as Exhibit B.

13. At or around the same time, DH received all of the gloves it ordered in relation to Invoice 2915.

14. On or about October 5, 2021, ICU issued Invoice 3066 to DH for an additional order it placed for two thousand four hundred ninety-six (2,496) cases of nitrile gloves for One Hundred Thirty-Seven Thousand Two Hundred Eighty Dollars ($137,280.00) at a unit price of Fifty-Five Dollars ($55.00). A true and correct copy of Invoice 3066 is attached hereto as Exhibit C.

15. At or around the same time, DH received all of the gloves it ordered in relation to Invoice 3066.

16. On or about October 7, 2021, ICU issued Invoice 3075 to DH for an additional order it placed for two thousand five hundred sixty-one (2,561) cases of nitrile gloves for One Hundred Forty Thousand Eight Hundred Fifty-Five Dollars ($140,855.00) at a unit price of Fifty-Five Dollars ($55.00). A true and correct copy of Invoice 3075 is attached hereto as Exhibit D.

17. At or around the same time, DH received all of the gloves it ordered in relation to

Invoice 3075.

18.     Aside from the partial payment of One Hundred Twenty-Seven Thousand Nine Hundred Twenty Dollars ($127,920.00) that was paid towards Invoice 2915, DH never issued payment for the outstanding balances listed in Invoices 2915, 3066 and 3075.

19.     As a result of Defendants' failure and refusal to pay the outstanding balances owed to ICU for Invoices 2915, 3066 and 3075, ICU's business sustained substantial damages and harm in an amount no less than Two Hundred Ninety-Three Thousand Three Hundred Fifty-Five Dollars ($293,355.00).

### Invoice 3223

20.     On or about November 5, 2021, ICU issued Invoice 3223 to DH for an additional order it placed for two thousand nine hundred thirty-seven (2,937) cases of nitrile gloves for One Hundred Sixty-One Thousand Five Hundred Thirty-Five Dollars ($161,535.00) at a unit price of Fifty-Five Dollars ($55.00).  A true and correct copy of Invoice 3223 is attached hereto as Exhibit E.

21.     On or about the same date, ICU shipped the gloves for Invoice 3223 from Los Angeles, California to DH in Fort Lauderdale, Florida.

22.     ICU spent Nine Thousand Five Hundred Thirty Dollars ($9,530.00) to ship the goods to DH.  A true and correct copy of the shipping invoice is attached hereto as Exhibit F.

23.     Approximately one month after the arrival of the gloves, on or about December 20, 2021, the gloves were sent back to ICU due to DH's refusal and failure to pay for the gloves.

24.     Due to market conditions at the time ICU received the gloves back from DH, ICU could no longer sell the gloves at a Fifty-Five Dollar ($55.00) unit price.  However, in an effort to mitigate its losses, ICU sold the gloves through third-party transactions at a unit price of Thirty

Dollars ($30.00), which was reflective of the then-market price. In total, ICU sold the gloves through third-party transactions for Eighty-Eight Thousand One Hundred Ten Dollars ($88,110.00), a difference of Seventy-Three Thousand Four Hundred Twenty-Five Dollars ($73,425.00) from the amount DH agreed to pay for the gloves.

25. As a result of Defendants' failure and refusal to receive and pay for the gloves it ordered, as provided for in Invoice 3223, ICU's business sustained substantial damages and harm for an amount no less than Eighty-Two Thousand Nine Hundred Fifty-Five Dollars ($88,955.00).

## FIRST CLAIM FOR RELIEF

Breach of Contract
(Against All Defendants)

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. In or around July 2021, Plaintiff entered into a contract with Defendants pursuant to which Defendants agreed to order and pay for a set number of nitrile gloves from Plaintiff through various transactions that were to take place over the course of a year, as set forth above.

28. Defendants materially breached the contract by failing and refusing to pay the full balance owed to Plaintiff for the gloves Defendants received relating to Invoices 2915, 3066 and 3075.

29. Defendants further materially breached the contract by failing and refusing to pay ICU the full amount due for the gloves it ordered in relation to Invoice 3223 and by refusing to accept the gloves that it ordered from ICU.

30. In accordance with the parties' contract, Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the agreement except for those conditions, covenants and promises that have been excused by Defendants' breach of contract.

31. By reason of the foregoing breach of contract, and as a direct and proximate result

thereof, Plaintiff has suffered damages consisting of at least Three Hundred Eighty-Two Thousand Three Hundred Ten Dollars ($382,310.00), in an amount to be determined at trial, as well as interest accrued thereon, attorneys' fees and costs.

## **SECOND CLAIM FOR RELIEF**

Breach of Personal Guaranty
(Against Defendant Varun Datta)

32. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

33. On or about July 30, 2021, Datta executed the Guaranty in connection with the parties' agreement that DH would purchase two million four hundred thousand (2,400,000) boxes of nitrile gloves from ICU over the course of a one-year period. Pursuant to the terms of the Guaranty, Datta unconditionally and irrevocably guaranteed a personal payment of One Hundred Fifty Thousand Dollars ($150,000.00) to ICU for any obligations owed by DH to ICU as a result of the Agreement, including any indebtedness that may occur. Ex. A.

34. The Guaranty further states that Datta "waive[s] notice of default, non-payment and notice thereof and consent[s] to any modification or renewal of the agreement hereby guaranteed." *Id.*

35. Datta's obligation under the Guaranty matured once DH breached the Agreement by failing to make full payment for the gloves it received from ICU in relation to Invoices 2915, 3066 and 3075.

36. Datta's failure to pay ICU One Hundred Fifty Thousand Dollars ($150,000.00) following the indebtedness incurred by DH as a result of its breach of the Agreement constitutes a material breach of the Guaranty.

37. By reason of the foregoing breach of the Guaranty, and as a direct and proximate result thereof, Plaintiff has suffered damages consisting of One Hundred Fifty Thousand Dollars ($150,000.00), as well as interest accrued thereon, attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

Unjust Enrichment
(Against All Defendants)

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

39. Plaintiff delivered ten thousand one hundred twenty-six (10,126) cases of nitrile gloves to Defendant, of which Defendant retained six thousand one hundred eighty-nine (6,189) cases, as set forth above. Despite having received the gloves it ordered from ICU, Defendants have failed and refused to make full payment to ICU for the gloves and, instead, have retained the monies owed to ICU, thus obtaining a benefit from ICU.

40. As a direct and proximate result thereof, Defendants have been unjustly enriched, to Plaintiff's detriment.

41. Further, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in the amount of at least Two Hundred Ninety-Three Thousand Three Hundred Fifty-Five Dollars ($293,355.00), as well as interest accrued thereon, attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

Promissory Estoppel
(Against Defendant Datta Holdings, LLC)

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

43. DH made an unambiguous, definite and substantial promise to ICU when it represented that it would pay in full for the gloves it ordered from ICU.

44. When DH made this promise and representation, DH should have reasonably expected that such a promise would induce ICU into delivering gloves ordered by DH.

45. In reasonable reliance on DH's promise and representations, ICU delivered ten thousand one twenty-six (10,126) cases of nitrile gloves to DH.

46. Notwithstanding ICU's delivery of these gloves, DH broke its promise to ICU by

failing and refusing to make full payment to ICU for these gloves.

47. As a result a direct and proximate result of DH's failure and refusal to honor the promise it made to ICU, ICU has suffered an injustice in the form of damages consisting of at least Three Hundred Eighty-Two Thousand Three Hundred Ten Dollars ($382,310.00). Such an injustice can only be avoided by enforcement of the promise made by DH.

## FIFTH CLAIM FOR RELIEF

Promissory Estoppel
(Against Defendant Varun Datta)

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

49. Datta made an unambiguous, definite and substantial promise to ICU when he represented that he would pay to ICU up to One Hundred Fifty Thousand Dollars ($150,000.00) to be put towards any indebtedness incurred by DH as a result of any transactions attached to the Agreement.

50. When Datta made this promise and representation, Datta should have reasonably expected that such a promise would induce ICU into delivering gloves to DH.

51. In reasonable reliance on Datta's promise and representations, ICU delivered ten thousand one twenty-six (10,126) cases of nitrile gloves to DH.

52. Notwithstanding ICU's delivery of these gloves to DH, Datta broke his promise to ICU by failing and refusing to make payment of One Hundred Fifty Thousand Dollars ($150,000.00) to ICU following DH's failure to make payment for the outstanding balance owed to ICU.

53. As a direct and proximate result of Datta's failure and refusal to honor the promise it made to ICU, ICU has suffered an injustice in the form of damages consisting of at least One Hundred Fifty Thousand Ten Dollars ($150,000.00). Such an injustice can only be avoided by enforcement of the promise made by Datta.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against Defendants, jointly and severally, as follows:

A. General and compensatory damages in an amount to be proven at trial, at least in the amount of Three Hundred Eighty-Two Thousand Three Hundred Ten Dollars ($382,310.00);

B. Punitive damages in an amount to be proven at trial; and/or

C. For such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff respectfully demands a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED:  April 22, 2022

RESPECTFULLY SUBMITTED:

/s/ Lawren A. Zann
Lawren A. Zann
**GREENSPOON MARDER LLP**
200 E. Broward Blvd., Ste. 1800
Fort Lauderdale, FL 33301
Telephone: (954) 333-4345
Email:  lawren.zann@gmlaw.com
Sharon A. Urias (*Pro Hac Vice anticipated*)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ  85255
Telephone:  480.306.5458
Email:  sharon.urias@gmlaw.com